IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-01056-PAB-NRN

NICHOLAS JASON HALL,

    Plaintiff,

v.

MATT ELBE, and
KENNETH LEACH,

    Defendants.

---

**ORDER**

---

This matter is before the Court on Defendant Sergeant Leach's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Docket No. 107].

**I. BACKGROUND**

This action arises from plaintiff's time as a pretrial detainee at the Weld County Jail ("WCJ"). Docket No. 107 at 3, ¶ 1. During the same period, defendant Leach was the Sergeant of Detentions at WCJ. *Id.* at 4, ¶ 2.

On September 17, 2017, plaintiff approached a deputy at WCJ regarding an issue with his meal. *Id.*, ¶ 3. During the conversation, the deputy told plaintiff that he was going to be given a citation. *Id.*, ¶ 4. Plaintiff took the citation from the deputy and walked up a flight of stairs. *Id.*, ¶ 5. Plaintiff and the deputy argued with each other, separated by the stairs. *Id.*, ¶ 6. The deputy told plaintiff to "lock down" and stated that he would pepper spray plaintiff if he refused. *Id.*, ¶ 7. Plaintiff walked away from the deputy, and the deputy pepper sprayed plaintiff. *Id.* at 5, ¶ 9. The deputy called for

assistance.  *Id.*  Another deputy arrived and tried to restrain plaintiff.  *Id.*, ¶ *10*.  Leach heard the call for assistance and responded.  *Id.* at 6, ¶ 13.  Upon his arrival, he saw several officers trying to restrain plaintiff.  *Id.*, ¶ 14.  Leach attempted to help restrain plaintiff and struck plaintiff's hands seven times.  *Id.* at 7, ¶¶ 20-22.  Mr. Hall was eventually restrained after being tased and handcuffed by a different officer.  *Id.* at 8, ¶ 28.[1]  Plaintiff's injuries consisted of two small wounds on his abdominal area from the taser probes, bruising on his wrist, a cut on his finger, and some scrapes and bruises on his leg.  *Id.* at 9, ¶ 35.

WCJ has a four-step administrative grievance procedure.  *Id.*, ¶ 36.  Grievance responses at each step are returned to inmates in paper form.  *Id.*, ¶ 38.  All grievances and responses are maintained in WCJ's system[2] which allows queries to be run to locate grievances based on "inmate name, inmate number, date of grievance submission, date of alleged incident, or subject matter."  *Id.*, ¶ 40.  Defendant Elbe searched for any grievances filed by plaintiff about September 17, 2017 and did not find any grievances related to this incident that plaintiff filed.  *Id.* at 10, ¶ 41.  Elbe also reviewed all the grievances plaintiff filed from April 17, 2017 to December 7, 2018 and

---

[1] The parties dispute how many times plaintiff was tased.  *See* Docket No. 125 at 5, ¶ 28.  Docket No. 127 at 5, ¶ 28.

[2] Plaintiff disputes that all grievances are maintained on the WCJ system, but does not provide a citation to the record in support of this claim.  *See* Docket No. 125 at 6, ¶ 39.  The practice standards require that "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial." Practice Standards (Civil case), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  Failure to follow the practice standards "may cause the Court to deem certain facts as admitted."  *Id.* at III.F.3.b.ix.  Accordingly, the Court accepts this fact as undisputed.

found sixteen instances in which plaintiff completed all four steps of the grievance process; however, none related to the September 17, 2017 incident.  *Id.*, ¶ 42.

Plaintiff filed this lawsuit on May 4, 2018.  Docket No. 1.  Counsel was appointed in this matter on June 27, 2019.  Docket No. 60.  Plaintiff filed an amended complaint on May 5, 2020.  Docket No. 77.  His amended complaint brings claims of First Amendment violations against Elbe and a claim of a Fourteenth Amendment violation against Leach.  Docket No. 77-2 at 5-9.  Leach moved for summary judgment, Docket No. 107, and plaintiff responded.  Docket No. 125.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Leach argues that it is undisputed that plaintiff did not exhaust his Fourteenth Amendment excessive force claim against him. *Id.* at 10-11. Plaintiff responds that he did exhaust his claim by following all four steps of the grievance procedure at WCJ and that he has supported this claim with his declaration and deposition testimony stating that he completed the grievance process. Docket No. 125 at 7. Plaintiff argues that "[a] jury could thus infer" from Elbe's "inability to find Mr. Hall's excessive-force grievance in [WCJ's] system that the jail simply failed to file Mr. Hall's grievance, or misplaced it." *Id.* at 8. Plaintiff does not request a hearing on exhaustion and does not argue that there is evidence beyond the briefing that could be presented at a hearing. In the absence of a request or indication that a hearing is necessary, the Court will decline to hold one. *See Bryant v. Rich*, 530 F.3d 1368, 1377 n. 16 (11th Cir. 2008) ([I]n the absence of a timely request for an evidentiary hearing and where the resulting order is to be a dismissal

4

without prejudice, a district court may resolve material questions of fact on submitted papers for the PLRA's exhaustion of remedies requirement).

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This requirement reaches 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Galindo v. Gentry*, 643 F. App'x 807, 808 (10th Cir. 2016) (unpublished) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, (2002)). An inmate's obligation to exhaust administrative remedies is mandatory. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA."). The sole exception to exhaustion is that an inmate is only required to exhaust "available" remedies. *See Ross*, 136 S. Ct. at 1856. Critically, administrative remedies must be exhausted before filing suit; an inmate is not permitted to exhaust remedies during the pendency of litigation. *See Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) (unpublished) ("Since the PLRA makes exhaustion a precondition to *filing* a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." (citations omitted)); *see also Woodford v. Ngo*, 548 U.S. 81, 94-96 (2006) (holding that the PLRA requires "proper" exhaustion such that the entire administrative process is completed before filing suit). A plaintiff is not entitled to a jury finding on exhaustion. "[E]xhaustion is a threshold issue that *courts* must address

5

to determine whether litigation is being conducted in the right forum at the right time." *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013) (citation omitted) (emphasis in original); see *Carbajal v. McMann*, 808 F. App'x 620, 639 (10th Cir. 2020) (unpublished) ("Every circuit that has considered the issue agrees that 'judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury. . . We agree with our sister circuits.'" (quoting *Small*, 728 F.3d at 271 (3d Cir. 2013))).

It is undisputed that there is no record of plaintiff's grievance on the WCJ system. Docket No. 107 at 10, ¶¶ 41-42. Nevertheless, plaintiff argues that his deposition testimony and declaration stating that he exhausted his claim create a factual dispute sufficient to survive summary judgment. Docket No. 125 at 8.

Plaintiff's declaration states that he followed all four steps of the grievance procedure and complied with WCJ's policy on grievances. Docket No. 125-4 at 2-3. At plaintiff's deposition, he testified to the following: Plaintiff filed a grievance about the September 17 incident. Docket No. 125-1 at 9, 157:8-10. Plaintiff's grievance was filed the same day as the incident or the day after, and he received a response stating he would need to proceed to step two. *Id.* at 9-10, 157:11-158:13. He filed a step two grievance, but was informed that he needed to "reconstruct" his grievance. *Id.* at 12, 160:10-15. Plaintiff "reconstructed" his grievance to address "the use of excessive force as well as the impending administrative segregation" he was facing based on the September 17, 2017 incident. *Id.* at 13, 161:1-5. This new grievance named Leach. *Id.* at 14, 162:2. Plaintiff received a response to his step one grievance, *id.* at 15, 163:1-11, and plaintiff filed a step two grievance for which he received a response. *Id.* at 15, 16, 163:12-13, 164:7-9. Plaintiff submitted a step three grievance, *id.* at 16, 164:23-24, and

received a reply and plaintiff submitted a step four grievance, *id.* at 18, 166:10-12, and received a reply.  *Id.* at 19, 167:16-18.

Plaintiff does not cite any other evidence of grievances that pertain to his claim at any stage of the grievance procedure and does not submit any of his grievances or the responses to them.  *See* Docket No. 125.  Plaintiff argues that "[a] jury could thus infer" WCJ lost his grievances for all four steps.  *Id.* at 8.  Plaintiff does not claim he did not receive responses to his grievances.  He also does not provide an explanation as to why he cannot produce any of the responses.  *Id.* at 7-9.

Plaintiff does submit evidence that a separate grievance was not returned or is missing as proof that grievances can be lost.  Docket No. 125-6, at 2.  However, in that case, when plaintiff's prior grievances for an unrelated incident could not be located, new documentation was provided for plaintiff to continue to the next stage of the grievance process.  *Id.*  Plaintiff does not explain why he could not have obtained replacement documentation regarding the alleged September 17 grievance.

Plaintiff also cites Elbe's deposition testimony that "there may very well have been a time when a grievance was not entered appropriately into the system," Docket No. 130-1 at 2, 182:5-8, as evidence that grievances are not always logged.  *See* Docket No. 125 at 7-8.  This testimony, however, does not support plaintiff's claim that his own grievance was lost and it does not explain why plaintiff cannot produce any grievance responses himself.

The Court finds, based on the undisputed facts, that all grievances and responses to grievances are maintained in WCJ's system, that the system can be searched by inmate name, that Elbe searched the system by plaintiff's name and found

7

no grievance regarding the September 17, 2017 incident, that when plaintiff needed replacement documentation regarding unrelated grievances he was able to obtain copies, and that plaintiff presents no copies of any paperwork related to the alleged September 17, 2017 grievances he filed. Based on these findings, the Court concludes that plaintiff's deposition testimony and declaration stating that he did file grievance paperwork regarding the September 17, 2017 incident is unworthy of belief and will be disregarded. The Court finds Leach has demonstrated that plaintiff has not exhausted his administrative remedies. Accordingly, the Court agrees with Leach that plaintiff has not exhausted his excessive force claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Sergeant Leach's Motion for Summary Judgment [Docket No. 107] is **GRANTED**. It is further

ORDERED that plaintiff's Fourteenth Amendment claim against Kenneth Leach is **DISMISSED**. It is further

**ORDERED** that defendant Kenneth Leach is **DISMISSED** from this case.

DATED March 31, 2022.

                                       BY THE COURT:

                                       _____
                                       PHILIP A. BRIMMER
                                       Chief United States District Judge